IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                                                                        24-CR-97

GINO SALTER,

            Defendant.

---

## GOVERNMENT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and Stacey N. Jacovetti, Assistant United States Attorney, of counsel, hereby files its sentencing memorandum.

## PROCEDURAL HISTORY

On July 23, 2024, a five-Count Indictment was filed in the U.S. District Court for the Western District of New York. On June 24, 2025, before the Honorable Lawrence J. Vilardo, United States District Court Judge, the defendant plead guilty under a plea agreement to Count 3, which charged a violation of Title 18, United States Code, §§ 933(a)(1) and (a)(3), and Count 4, which charged a violation of Title 922(o) and 924(a)(2). Pursuant to the plea agreement, the parties retain the right to recommend a sentence outside of the Sentencing Guidelines range. Sentencing was scheduled for November 3, 2025.

## SENTENCING PROCEDURE

The Supreme Court in United States v. Booker, 543 U.S. 220 (2005), excised Section 3553(b)(1) from the Sentencing Reform Act, which had strictly limited sentencing judges' discretion to the mandatory regime of the Sentencing Guidelines and Guidelines departures. Booker, 543 U.S. at 234, 236. Today, after considering the Guidelines and all the applicable purposes of sentencing in Section 3553(a) of Title 18, a sentencing judge is required to decide whether to impose a Guidelines or non-Guidelines sentence. United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005).

Title 18, United States Code, Section 3553(a) requires that this Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." In determining the sentence, this Court must consider the following:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed –

   a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   b. to afford adequate deterrence to criminal conduct;

   c. to protect the public from further crimes of the defendant; and

   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentence and the sentencing range established for –

    a.    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

        i.    issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        ii.    that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    b.    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

5.    any pertinent policy statement –

    a.    issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    b.    that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

6.    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In executing these statutory responsibilities, the Court must first correctly calculate the applicable Guidelines range. Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 596 (2007). This range is "the starting point and the initial benchmark." Id.  As the Second Circuit held, "[t]he Guidelines range . . . represents the Sentencing Commission's considered opinion about what the sentence should be in an 'ordinary' case and therefore serves as the district court's 'starting point' in selecting a sentence.  The § 3553(a) factors, in turn, provide the sentencing judge with a set of criteria for potential variances, based on 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" United States v. Dorvee, 616 F.3d 174, 182 (2d Cir. 2010). Although this Court must treat the Guidelines as advisory, United States v. Ratoballi, 452 F.3d 127, 131-32 (2d Cir. 2006), an error in determining the applicable Guideline range or the availability of departure authority nonetheless would be the type of procedural error that could render a sentence unreasonable on appellate review. United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005); United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (a district court commits procedural error where it fails to calculate the Guidelines range, makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory).

While this Court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007), neither are sentencing judges "free to ignore the Guidelines, or to treat them merely as a 'body of casual advice.'"  Cavera, 550 F.3d at 189, quoting United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005); see also United States v. Jones, 531 F.3d 163, 174 (2d Cir. 2008) ("respectful consideration of the Guidelines . . . necessarily channels district court sentencing

4

discretion"). Further, the Second Circuit has observed that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be [upheld as] reasonable in the particular circumstances." United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006). See also United States v. Eberhard, 525 F.3d 175, 179 (2d Cir. 2008).

Next, after giving the parties an opportunity to argue for whatever sentence they deem appropriate, this Court must then "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party." Gall, 128 S. Ct. at 596. In determining whether the § 3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented." Id. at 597. In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. See Cavera, 550 F.3d at 190-91. If a non-Guidelines sentence is warranted, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 128 S. Ct. at 597.

After settling on the appropriate sentence, the Court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id., citing Rita, 127 S. Ct. at 2456. Although this Court need not engage in "robotic incantations" with respect to its consideration of the § 3553(a) factors, Fernandez, 443 F.3d at 30, "[t]he sentencing judge should set forth enough to satisfy the appellate court

that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." Rita, 127 S. Ct. at 2468. Further, "a district court imposing a non-Guidelines sentence . . . should say why she is doing so, bearing in mind . . . that 'a major departure [from the Guidelines] should be supported by a more significant justification than a minor one.'" Cavera, 550 F.3d at 193 (quoting Gall, 128 S. Ct. at 197 (ellipses added, brackets in original)).

In light of the background of the legal principles set forth above, the government submits that the Court should sentence the defendant to the sentencing guidelines range of imprisonment contemplated by the plea agreement of between 63-78 months, to afford adequate deterrence to the defendant's criminal conduct, reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

## ARGUMENT

A. **The Factors Under § 3553(a) Support a Sentence within the Guidelines Range Contemplated by the Plea Agreement**

   1) **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

This matter centers on conduct that occurred in 2023, whereby the defendant directed the co-defendant, Jordan Lippert, to purchase firearms on his behalf so that he could sell the firearms in the Buffalo, New York, area. While the co-defendant purchased a total of seven firearms for the defendant, which in and of itself is a significant quantity, it is apparent that the defendant's conduct in possessing and selling firearms was much more expansive. This conclusion can be gleamed from a review of the Facebook messages, which demonstrate that

6

the defendant was not only routinely arranging the sale of firearms, but that some of the firearms involved extended capacity clips.[1] *See* Gov't Exhibit 1.

Moreover, the defendant's conduct involved selling a total of three machinegun conversion devices. Machinegun conversion devices are designed and created for the sole purpose of converting a semi-automatic Glock pistol into a fully automatic pistol that will allow the firearm to expel more than one projectile by a single pull of the trigger.

What is most concerning about this conduct is that the illegal distribution of firearms and machine gun conversion devices put extremely dangerous weapons into the hands of those whose possession and use of them inherently puts the community itself at danger. It is a reasonable assumption that individuals who purchase firearms illegally intend to either use or possess those firearms, for illegitimate purposes. In fact, purchasing firearms illegally is normally how drug dealers and gang members obtain the firearms that they use in their illegal activities. In this way, the defendant's own illegal conduct has ripple effects beyond the immediate act. Each of those ripple effects pose a risk of danger to members of the community.

The history and characteristics of the defendant also weigh towards the requested guidelines range sentence. It is noted that although the defendant's criminal history is not extensive, at age 17, the defendant was convicted of two misdemeanor offenses and sentenced

---

1 Defendant's Facebook messages (username "Kevin Gmb") include the following: "got the glock with the 30 clip," "and I got this glock with the 31 round clip," *See* Statement of the Government with Respect to Sentencing Factors, Gov't Exhibit 1.

to probation. In 2017, his probation was revoked, and he was sentenced to five months imprisonment. Although the defendant pled guilty to misdemeanors, the underlying conduct of the offense is serious and concerning. The defendant and another individual forcibly removed a backpack from a person and then fled. During the commission of the offense, the defendant punched three victims, causing injuries. *See* Dkt. 59, pg. 12.

The mitigating value of the defendant's relative lack of criminal history is overshadowed not only by the seriousness of the instant offense, but by the defendant's behavior while on pretrial release. The defendant was given the opportunity to demonstrate that he was able to be law-abiding and able to abide by the conditions of the Court when he was placed on pretrial release. Instead of taking that opportunity, the defendant cut off his GPS ankle bracelet and absconded. It took significant law enforcement resources and time to locate the defendant, which took approximately four months. During the entire four months, the defendant could have chosen to acknowledge he made a mistake and turned himself in, but he did not do so. These actions speak volumes to the defendant's apparent lack of remorse and deterrence as well as his lack of appreciation for the dangerousness his criminal conduct posed to the community.

Taking all these factors into consideration, it is the government's position that a sentence within the guidelines range contemplated in the plea agreement of 63-78 months is appropriate and will address both the serious nature and circumstances of the offense.

**2)** **The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

Under 18 U.S.C. § 3553(a)(2)(A), the Court should consider how the sentence fashioned reflects the seriousness of the offense. To achieve this end, the Court should consider the objective harm of the offense and the subjective culpability of the offender himself. As previously noted, the defendant's conduct was serious in that the distribution of firearms and machinegun conversion devices to individuals who are unable to legally possess them poses a serious risk of danger to the community. A sentence within the guidelines range contemplated by the plea agreement of 63-78 months, consistent with the government's filings, addresses the seriousness of the offense under § 3553(a)(2)(A).

**3)** **Deterrence**

Under 18 U.S.C. § 3553(a)(2)(B), the Court should consider whether a sentence affords adequate deterrence. Unlike other sentencing considerations, the goal of deterrence is not to punish the crime at hand, but to achieve a practical end for the future—namely the prevention of crime. Deterrence can be both specific to the defendant or general to the public. As one court explained: "[s]pecific deterrence is meant to disincline individual offenders from repeating the same or other criminal acts. . . [while] [g]eneral deterrence attempts to discourage the public at large from engaging in similar conduct." United States v. Blarek, 7 F. Supp. 2d 192, 210 (E.D.N.Y.), aff'd, 166 F.3d 1202 (2d Cir. 1998) (internal citations omitted).

Here, the considerations of general and specific deterrence weigh towards a sentence within the guidelines range contemplated in the plea agreement. The timeline of the instant offense conduct serves as an example of the defendant's lack of being deterred from engaging in criminal conduct. The defendant was arrested and interviewed by ATF on August 9, 2023, when he was arrested and found in possession of firearms. He was initially charged at the state level with criminal possession of weapons. Despite his arrest and pending state case, the defendant continued to solicit firearms sales on Facebook. The defendant has Facebook messages on October 10, 2023, December 1, 2023, December 4, 2023, and December 17, 2023, referencing the sale of firearms. *See* Gov't Exhibit 1. This, in combination with the defendant's own behavior while on pretrial release, clearly demonstrates that he has not been deterred.

The defendant's behavior in continually engaging in criminal conduct and not abiding by a court's conditions is the norm, not the exception, for him. Three times now he has been given opportunities. All three times he has failed to prove to a court that he is capable of abiding by basic conditions. First, in 2017, the defendant was given an opportunity in his misdemeanor state case when he was placed on probation. He failed to comply with the conditions, his probation was revoked, and he served five months in prison. Second, in August 2023 after being arrested and charged in state court with criminal possession of a weapon, he was given an opportunity by being released from pretrial detention. Instead of refraining from engaging in criminal conduct, he chose to continue to engage in the criminal conduct of illegally selling firearms. The same conduct that ATF agents questioned him about after his arrest on August 9, 2023. Third, he was given an opportunity by the Magistrate Court

after being charged with several violations of federal law when he was released on pretrial release. Instead of complying, he cut off his ankle bracelet and absconded for four months. The defendant's own actions demonstrate time and time again that deterrence is a principle that does not resonate with him.

### 4) The Need to Protect the Public from Further Crimes of the Defendant

Under 18 U.S.C. § 3553(a)(2)(C), the Court should consider whether a sentence considers the need for incapacitation. "Incapacitation seeks to ensure that offenders are rendered physically incapable of committing crime." United States v. Blarek, 7 F. Supp. 2d 192, 209 (E.D.N.Y.), aff'd, 166 F.3d 1202 (2d Cir. 1998) (quoting Arthur W. Campbell, Law of Sentencing § 2:3, at 27–28 (1991)). Given the defendant's persistence on engaging in criminal conduct and his failure to abide by the Court's conditions of release, the considerations under § 3553(a) once again weigh in favor of a guidelines range sentence consistent with the government's filings.

### B. The Factors Under § 3553(a) Support a Sentence within the Guidelines Range Contemplated by the Plea Agreement

If the Court determines that the Specific Offense Characteristic for trafficking in firearms pursuant to U.S.S.G. § 2K2.1(b)(5) does not apply, the government requests an upward variance in order to impose a sentence that is sufficient, but not greater than necessary, to serve the goals of sentencing set forth in Title 18, United States Code, Section 3553(a). An upward variance in this scenario would be necessary to reflect the seriousness of the offense, provide a just punishment, protect the public from further crimes of the defendant, and provide specific and general deterrence. The United States submits that an upward

11

variance to the sentencing range contemplated by the plea agreement of 63-78 months, would be sufficient, but not greater than necessary, to achieve the statutory purposes of sentencing.

In this case, the parties improperly utilized the 2023 United States Sentencing Guidelines in formulating the anticipated offense level and sentencing range. U.S. Probation correctly references the 2021 manual for the trafficking in firearms enhancement as the enhancement for the 2021 manual is four levels versus the five levels under the 2023 manual. The parties agreed that pursuant to U.S.S.G. § 2K2.1(b)(5)(C), an upward adjustment of five levels was warranted as the defendant engaged, and conspired to engage, in the trafficking in firearms. *See* Dkt. 45, pg. 5. Although the 2021 manual utilizes different language than the 2023 manual, Application Note 13 of the 2021 manual provides a definition of "defendant" that is similar to the language employed in 2K2.1(b)(5)(C) of the 2023 manual. Application Note 13 specifically states that "the term 'defendant' consistent with §1B1.3 (relevant conduct), limits the accountability of the defendant to the defendant's own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." *See* Application Note 13, U.S.S.G. § 2K2.1(b)(5), 2021 Guidelines Manual. Despite this expansive definition, U.S. Probation did not apply the four-level enhancement for trafficking in firearms. *See* Dkt. 59, pg. 15.

The parties agreed pursuant to the plea agreement that the defendant's conduct included trafficking in firearms. The enhancement under U.S.S.G. § 2K2.1(b)(5)(C) was held to be applicable to the co-defendant in this case, whose conduct was arguably less culpable than the defendant's own conduct. Failure to sentence within the range contemplated by the

plea agreement of 63 to 78 months, would thus fail to consider the defendant's conduct of conspiring to engage in the business of dealing in firearms. The defendant admitted in the plea agreement that he sought to sell the firearms he illegally obtained from the co-defendant. *See* Dkt. 45, pg. 4. Moreover, the conduct involved at least eight firearms (at least seven of which were provided by the co-defendant). Both the 2021 and the 2023 Sentencing Guidelines Manual include a significant upward enhancement for trafficking in firearms, presumably because the serious nature of the conduct justifies increasing the sentence a person faces.

## **CONCLUSION**

For the above reasons, the government respectfully requests that the Court impose a sentence within the guidelines range contemplated in the plea agreement in this case.

DATED:   Buffalo, New York, October 3, 2025.

                                                MICHAEL DIGIACOMO  
                                                United States Attorney

BY:   s/STACEY N. JACOVETTI  
       Assistant United States Attorney  
       United States Attorney's Office  
       Western District of New York  
       138 Delaware Avenue  
       Buffalo, New York 14202  
       716/843-5708  
       Stacey.Jacovetti@usdoj.gov